1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DESMOND MICHAEL MORELAND,

11           Petitioner,                    No. 2: 12-cv-0561 LKK KJN P

12       vs.

13   TIM VIRGA,

14           Respondent.              FINDINGS AND RECOMMENDATIONS

15   _____/

16   I. Introduction

17           Petitioner is a state prisoner, proceeding without counsel, with a petition for writ

18   of habeas corpus pursuant to 28 U.S.C. § 2254.  This action is proceeding on the original petition

19   filed March 2, 2012.  Petitioner alleges that his minimum eligible parole date ("MEPD") has

20   been miscalculated based on incorrect interpretations of his sentence.

21           In particular, petitioner alleges that he was convicted of attempted murder and

22   second degree robbery with use of a firearm in 2001.  (Dkt. No. 1 at 1.)  Petitioner alleges that he

23   was sentenced to 25 years to life.  (Id.)  Petitioner alleges that he has since been informed by

24   prison officials that his sentence is 55 years to life, 32 years to life, and life without the

25   possibility of parole.  (Id. at 16-17.)  Petitioner alleges that his MEPD has not been calculated

26   based on his actual sentence.

Pending before the court is respondent's May 18, 2012 motion to dismiss. Respondent argues that this action should be dismissed on four grounds: 1) failure to state a cognizable federal claim; 2) petitioner's claim is unexhausted; 3) petitioner's claim is barred by the statute of limitations; and 4) petitioner's claim is procedurally barred.

For the following reasons, the undersigned recommends that respondent's motion be granted.

II.  Discussion

A.  Clarification of Petitioner's Claim

Petitioner claims that his MEPD has been incorrectly calculated based on incorrect interpretations of his sentence.  Petitioner does not claim that he has reached his MEPD, based on what he alleges is his correct sentence.

The Due Process Clause protects prisoners from being deprived of liberty without due process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  In order to state a cause of action for deprivation of due process, a prisoner must first establish the existence of a liberty interest for which the protection is sought.  Liberty interests may arise from the Due Process Clause itself or from state law.  Hewitt v. Helms, 459 U.S. 460, 466–68 (1983).  Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 484 (1995).

Once a liberty interest is established, a Fourteenth Amendment violation may arise from a deprivation of that interest under color of law through action that is clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare.  Patel v. Penman, 103 F.3d 868, 874 (9th Cir. 1996), overruled in part on other grounds by Nitco Holding Corp., v. Boujikian, 491 F.3d 1086 (9th Cir. 2007), or through a failure to provide that process which is due the identified liberty interest.  Wolff, 418 U.S. 539 at 556; see also Sandin, 515 U.S. 472 at 478.

2

A prisoner may claim a Fourteenth Amendment "liberty interest" in avoiding incarceration beyond his or her release date. "The Supreme Court has recognized that an individual has a liberty interest in being free from incarceration absent a criminal conviction." Lee v. City of Los Angeles, 250 F.3d 668, 683 (9th Cir. 2001), citing Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992). "[B]ecause a prisoner's interest in avoiding wrongful detention is a strong one, due process entitles a prisoner with a meaningful and expeditious consideration of claims that the term of prisoner's sentence has been miscalculated." Royal v. Durison, 319 F. Supp. 2d 534, 539 (E.D.Pa. 2004). "If the [prison] officials made their calculations in a manner which denied [prisoner] his statutory right to liberty without due process of law, a constitutional violation exists and a cause of action is available under § 1983." Haygood v. Younger, 769 F.2d 1350, 1355 (9th Cir. 1985).

> When an inmate informs proper authorities of a claim that his or her release date was incorrectly calculated, due process requires that the state provide "a meaningful hearing at a meaningful time." Haygood, 769 F.2d 1350 at 1356. An inmate claiming an error in the computation of a term of confinement, based upon documentation in the record, not resolved at the first level of prison appeal may request a Haygood hearing as the second level appeal. See Cal.Code Regs. tit.15, § 3084.7(h); CDCR–Department Operations Manual (DOM), § 54100.29 et seq. The only issue to be determined in the Haygood hearing is whether or not an error has been committed which adversely affects a term of confinement or period of parole. CDC–DOM, § 54100.29. If an error has been made the California Department of Corrections and Rehabilitation ("CDCR") shall correct it or refer the matter referred to any appropriate agency or court for disposition. See Cal.Code Regs. tit. 15, § 3084.7(h); CDC–DOM, § 54100.29.4. An inmate may submit the appeal to the third level if dissatisfied with the second level response. See Cal. Code Regs. tit. 15, §§ 3084.2(d), 3084.7(h).

Jenkins v. Bernatene, 2012 WL 3764035 at *4 (E.D.Cal. 2012).

Based on the case law cited above, the undersigned construes petitioner to be alleging that prison officials refused his requests to correct the alleged error in the computation of his sentence and MEPD in violation of his right to due process.

////

B. Background

To put respondent's motion in context, the following background information is necessary.

On February 22, 2011, petitioner filed an administrative grievance challenging the computation of his sentence. (Dkt. No. 12-3 at 63-68.) In this grievance, petitioner alleged that in July 2004, the Board of Parole Hearings ("BPH") directed the California Department of Corrections and Rehabilitation ("CDCR") to obtain a copy of petitioner's sentencing transcript so that it could correctly calculate his MEPD. (Id. at 63.) Petitioner went on to allege that he had been informed that he had three different sentences: life without parole, 55 years to life and 32 years to life. (Id. at 63, 65.) Petitioner alleged that as of January 8, 2010, CDCR had still not obtained his sentencing transcript. (Id. at 65.) Petitioner went on to allege that CDCR's calculation of his sentence was still incorrect. (Id.) As relief, petitioner requested that CDCR obtain his sentencing transcript and correctly calculate his MEPD. (Id. at 63, 65.)

Petitioner's grievance was cancelled at the First Level on March 8, 2011, because it was not timely. (Id. at 63, 68.) On May 4, 2011, petitioner's grievance was rejected at the Director's Level of review because petitioner processed the appeal at an inappropriate level, bypassing lower levels of review. (Id. at 70.) In other words, petitioner failed to file a second level appeal.

On July 13, 2011, petitioner filed a habeas corpus petition in the Sacramento County Superior Court raising the claim raised in the instant petition. (Dkt. No. 12-2.) On August 31, 2011, the Sacramento County Superior Court denied petitioner's habeas petition, in part, based on his failure to exhaust administrative remedies:

////

////

////

////

4

1
2
3
4

> It is well established that an inmate must first exhaust all available administrative remedies prior to seeking relief with the court by way of a petition for writ of habeas corpus. (In re Muszalski (1975) 52 Cal.App.3d 500.) Petitioner has failed to do so and has not stated any facts which cause the court to excuse his lack of compliance with the exhaustion requirement.

5 (Dkt. No. 12-1 at 2.)

6           In a footnote, the Sacramento County Superior Court described petitioner's

7 unsuccessful attempt to exhaust administrative remedies:

8
9
10
11
12
13

> Petitioner has attempted to challenge the accuracy of CDCR's records and the calculation of his MEPD on two occasions. Unfortunately, the first appeal, filed in 2011, simply challenged the information as reflected on a 2004 document. Due to the seven year delay, his appeal was properly denied as untimely at the first level of review. The second appeal was submitted directly to the third level of review and was properly rejected for failing to first exhaust at the institutional level before approaching the administrative level. There is no indication that petitioner ever attempted to properly utilize the 602 appeals process.

14 (Id.)

15           The Superior Court also denied the petition on grounds that petitioner failed to

16 provide documentary evidence in support of his claim. (Id. at 3.)

17           Petitioner then filed a habeas corpus petition in the California Supreme Court.

18 (Dkt. No. 12-3.) The California Supreme Court denied this petition without comment or

19 citation. (Dkt. No. 12-4.)

20           C. Procedural Default/Failure to Exhaust

21           Failure to exhaust and procedural default/bar are different concepts. Franklin v.

22 Johnson, 290 F.3d 1223, 1230–31 (9th Cir. 2002). Under both doctrines, the federal court may

23 be required to refuse to hear a habeas claim. Id. The difference between the two is that when a

24 petitioner fails to exhaust, he may still be able to return to state court to present his claims there.

25 Id. In contrast, "[w]hen a petitioner's claims are procedurally barred and a petitioner cannot

26 show cause and prejudice for the default [or a fundamental miscarriage of justice] ... the district

1  court dismisses the petition because the petitioner has no further recourse in state court." Id. at

2  1231.

3          *Procedural Default*

4          Respondent argues that petitioner's claim is procedurally barred based on his

5  failure to exhaust administrative remedies.

6          A federal court will not review questions of federal law decided by a state court

7  "if the decision of that court rests on a state law ground that is independent of the federal

8  question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729

9  (1991). Before following the procedural default doctrine, a federal court must determine that the

10 state court explicitly invoked a state procedural bar as an independent basis for its decision. See

11 id. To be adequate, the state procedural bar must be "clear, consistently applied and

12 well-established at the time of the petitioner's purported default." Calderon v. United States

13 District Court (Bean), 96 F.3d 1126, 1129 (9th Cir. 1996) (internal quotation and citation

14 omitted). Unless a prisoner can "demonstrate cause for the default and actual prejudice as a

15 result of the alleged violation of federal law, or demonstrate that failure to consider the claims

16 will result in a fundamental miscarriage of justice," federal habeas review of the procedurally

17 defaulted claims is barred. Coleman, 501 U.S. at 750.

18         When a state procedural bar is applied by a state trial court and relief is

19 summarily denied by the state's higher courts, a federal court looks to the last reasoned state

20 court decision as the basis for the state court judgment. Ylst v. Nunnemaker, 501 U.S. 797, 803

21 (1991) ("Where, as here, the last reasoned opinion on the claim explicitly imposes a procedural

22 default, we will presume that a later decision rejecting the claim did not silently disregard that

23 bar and consider the merits.").

24         As discussed above, the Sacramento County Superior Court denied petitioner's

25 habeas petition, in part, based on his failure to exhaust administrative remedies.  (Dkt. No. 12-1

26 at 2.)  Petitioner then filed a habeas corpus petition in the California Supreme Court.  (Dkt.

No. 12-3.)  The California Supreme Court denied this petition without comment or citation.
(Dkt. No. 12-4.)  Accordingly, the undersigned presumes that the California Supreme Court
rejected petitioner's claim based, in part, on his failure to exhaust administrative remedies.

The rule in California that inmates must exhaust administrative remedies is well
established and has been applied since 1941.  See Abelleira v. District Court of Appeal,
17 Cal.2d 280, 292 (1941).  The rule was firmly established at the time of petitioner's default,
and has been consistently applied.  See In re Dexter, 25 Cal.3d 921, 925 (1979); In re Muszalski,
52 Cal. App. 3d 500 (1975); In re Serna, 76 Cal. App. 3d 1010 (1978).  In addition, the rule that
inmates must exhaust administrative remedies is based on state law and is independent of federal
law.  See Carter v. Giurbino, 385 F.3d 1194, 1197–98 (9th Cir. 2004) (a state rule is independent
where "[n]o federal analysis enters into the [rule's] equation").  Thus, the rule that inmates must
exhaust administrative remedies is an adequate and independent state ground that bars the
undersigned from reaching the merits of petitioner's claim.  Accordingly, petitioner's claim is
procedurally barred unless he demonstrates cause and prejudice or a fundamental miscarriage of
justice.

As discussed by the Sacramento Superior Court, petitioner failed to exhaust
administrative remedies by filing an untimely administrative grievance and by not properly
utilizing the administrative grievance process.  The record demonstrates that no external factor
impeded petitioner's ability to exhaust administrative remedies.  Therefore, petitioner has  not
demonstrated cause for his default.  See McCleskey v. Zant, 499 U.S. 467, 497 (1991) (for cause
to exist, the external impediment must have prevented petitioner from raising the claim).
Because petitioner has not demonstrated cause, there is no need to reach the issue of prejudice.

As will be discussed below, petitioner may be able to return to state court and
challenge the alleged error in the computation of his sentence and MEPD.  For this reason, the
undersigned finds no fundamental miscarriage of justice if petitioner's claim is not considered.
////

1    *Exhaustion*

2    Respondent argues that petitioner's claim is not exhausted based on the

3    Sacramento Superior Court's finding that he failed to exhaust administrative remedies and failed

4    to attach relevant documents.

5    A petitioner who is in state custody and wishes to challenge collaterally a

6    conviction by a petition for writ of habeas corpus must exhaust state judicial remedies.

7    28 U.S.C. § 2254(b)(1). The exhaustion doctrine is based on comity to the state court and gives

8    the state court the initial opportunity to correct the state's alleged constitutional deprivations.

9    Coleman v. Thompson, 501 U.S. 722, 731 (1991); Rose v. Lundy, 455 U.S. 509, 518 (1982).

10   A petitioner can satisfy the exhaustion requirement by providing the highest state

11   court with the necessary jurisdiction a full and fair opportunity to consider each claim before

12   presenting it to the federal court, and demonstrating that no state remedy remains available.

13   Picard v. Connor, 404 U.S. 270, 275–76 (1971). A federal court will find that the highest state

14   court was given a full and fair opportunity to hear a claim if the petitioner has presented the

15   highest state court with the claim's factual and legal basis. Duncan v. Henry, 513 U.S. 364, 365

16   (1995).

17   The exhaustion requirement is satisfied "if it is clear that (the habeas petitioner's)

18   claims are now procedurally barred under (state) law." Gray v. Netherland, 518 U.S. 152, 161

19   (1996), quoting Castille v. Peoples, 489 U.S. 346, 351 (1989). "A habeas petitioner who has

20   defaulted his federal claims in state court meets the technical requirements for exhaustion; there

21   are no state remedies any longer 'available' to him." Cassett v. Stewart, 406 F.3d 614, 621 n.5

22   (9th Cir. 2005) (quoting Coleman v. Thompson, 501 U.S. 722, 732 (1991)).

23   The Superior Court found that petitioner failed to administratively exhaust his

24   claim regarding CDCR's alleged disregard of the 2004 order by the BPH to obtain petitioner's

25   sentencing transcript. This claim is procedurally barred because petitioner cannot raise this

26   claim again in state court. Because this claim is procedurally barred, this claim is exhausted.

1    The Superior Court also denied the petition on grounds that petitioner failed to

2  submit supporting documentary evidence:

3       Further, petitioner bears the burden of pleading facts which, if
        proven true, would entitle him to relief.  (People v. Duvall (1995)
4       9 Cal.4th 464.)  In order to meet this burden, he must state with
        particularity the facts upon which he is relying to justify relief.  (In
5       re Swain (1949) 34 Cal.2d 300, 303-304.)  "Such factual
        allegations should also be supported by '[reasonably available]
6       documentary evidence or affidavits.'"  (In re Harris (1993) 5
        Cal.4th 813, 827 fn. 5.)
7
        Petitioner has not attached copies of either the amended abstract of judgment filed
8       in 2002 or the sentencing transcript – both of which are shown by the
        documentation to have been in his possession at some point during his
9       incarceration.  Therefore, he has failed to satisfy the above authorities.

10  (Dkt. No. 12-1 at 3.)

11    In Kim v. Villalobos, 799 F.2d 1317, 1319 (9th Cir. 1986), the Ninth Circuit

12  considered a state petition denied with a citation to In re Swain, 34 Cal.2d 300 (1949).  Like

13  Duvall, a citation to Swain stands for the proposition that a petitioner has failed to state his claim

14  with sufficient particularity.  That deficiency, when it exists, can be cured in a renewed state

15  petition and state judicial remedies therefore are not considered exhausted.  See Kim, 799 F.2d at

16  1319; see also McQuown v. McCartney, 795 F.2d 807, 808 n.1, 809 (9th Cir. 1986); Harris v.

17  Superior Court, 500 F.2d at 1128.  In Kim, the Ninth Circuit found that the Swain citation

18  indicated that the claims were unexhausted because their pleadings' defects, i.e., lack of

19  particularity could be cured in a renewed petition.  Kim, 799 F.2d at 1319.

20    The Superior Court's order indicates that petitioner could file another state habeas

21  petition challenging the alleged miscalculation of his sentence and MEPD if he included his

22  amended abstract of judgment and sentencing transcript.  The suggestion that petitioner could re-

23  file his state petition seems inconsistent with the Superior Court's order that petitioner's claim is

24  barred based on his failure to exhaust administrative remedies.  However, the  finding that

25  petitioner failed to exhaust administrative remedies appears to be linked to petitioner's claim

26  specifically challenging the CDCR's alleged disregard of the 2004 BPH order to obtain

petitioner's sentencing transcript. The finding that petitioner could re-file his state petition with proper documentation suggests that petitioner could file a new state petition challenging the alleged miscalculation of his sentence and MEPD so long as it was not based on the CDCR's alleged disregard of the 2004 BPH order. In other words, the Superior Court suggests that petitioner could file a renewed state petition challenging the alleged miscalculation of his sentence and MEPD, so long as it was linked to a different (and not otherwise barred) administrative decision.

Accordingly, a claim by petitioner challenging the alleged miscalculation of his MEPD that is not based on the 2004 BPH order to the CDCR is not exhausted because petitioner may return to state court and exhaust such a claim.

C. Statute of Limitations

Respondent argues that petitioner's claim is barred by the statute of limitations.

28 U.S.C. § 2244(d)(1) contains the relevant statute of limitations:

> (1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (c) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d).

1    Where, however, the petitioner is challenging an administrative decision,  the

2    statute of limitations commences when the final administrative appeal is denied.  Redd v.

3    McGrath, 343 F.3d 1077, 1079 (9th Cir. 2003) (holding that the Board of Prison Term's denial

4    of an inmate's administrative appeal was the "factual predicate" of the inmate's claim that

5    triggered the commencement of the limitations period); Shelby v. Bartlett, 391 F.3d 1061, 1066

6    (9th Cir. 2004) (holding that the statute of limitations does not begin to run until a petitioner's

7    administrative appeal has been denied).

8    ////

9    Respondent first argues that petitioner did not file an administrative appeal

10   directly challenging the computation of his sentence and MEPD.  In his opposition, petitioner

11   argues that in 2011 he filed an administrative appeal challenging the computation of his MEPD

12   and sentence.  Petitioner cites the May 4, 2011 Director's Level decision, rejecting petitioner's

13   appeal challenging CDCR's alleged disregard of the 2004 order by the BPH to obtain his

14   sentencing transcript.  Petitioner argues that the statute of limitations runs from May 4, 2011.

15   As discussed above, petitioner's first level appeal was denied as untimely.

16   Petitioner's Director's Level grievance was denied based on petitioner's bypassing of the second

17   level of review.

18   District courts have taken different approaches in determining whether untimely

19   grievances are the commencement date for the statute of limitations.   Several courts have found

20   that the limitations period ran from the date the administrative decision was made, not when the

21   untimely administrative appeal was ruled on.  See Webb v. Walker, 2008 WL 4224619 at *3

22   (E.D. Cal. Sept. 15, 2008); Edwards v. Small, 2011 WL 976606 at *5-6 (S.D. Cal. Feb. 18,

23   2011); Kimbrell v. Cockrell, 311 F.3d 361, 363 (5th Cir. 2002).

24   In contrast, in Xiong v. Adams,  2010 WL 3069245 (E.D. Cal. Aug. 3, 2010), the

25   court found that the factual predicate occurred after the final, improperly filed, administrative

26   appeal was rejected.  Other courts have declined to decide if an improperly filed administrative

11

1 appeal altered the date the statute of limitations commenced.  See Sandoval v. Woodford,

2 2009 WL 161066  (E.D. Cal. Jan. 22, 2009); Hecker v. Hubbard, 2008 WL 4058713 (E.D. Cal.

3 Aug. 27, 2008).

4        In his 2011 administrative appeal, petitioner complained that CDCR had not

5 obtained his sentencing transcript as they had been ordered to do in July 2004 by the BPH.

6 While petitioner continued to receive information regarding the alleged miscalculation of his

7 sentence after July 2004, he did not file a grievance challenging the CDCR's failure to obtain the

8 transcript to correct the sentencing error until 7 years after it was allegedly ordered to do so.[1]

9 Based on these circumstances, the undersigned does not find that the statute of limitations began

10 to run on May 4, 2011, i.e., the date the grievance was rejected at the Directors Level based on

11 petitioner's bypassing of the second level of review.   Based on the facts of the instant case, the

12 undersigned adopts the reasoning of the courts in Webb, Edwards and Kimbrell, supra, finding

13 that the statute of limitations runs from the date the administrative decision is made, and not

14 when the improperly filed administrative appeal was denied.

15        In the instant case, there is no administrative decision from which the statute of

16 limitations can be calculated.  However, petitioner became aware that his sentence was still not

17 properly calculated in 2005, when he was informed that he was sentenced to life without the

18 possibility of parole at his classification hearing.  Clearly, in 2005 petitioner knew that the

19 CDCR had not complied with the BPH's 2004 order.  The instant action was not filed within one

20 year of the 2005 classification hearing.  See 28 U.S.C. § 2244(d)(1)(D) (statute of limitations

21

22    [1] As noted by respondent, petitioner has been aware of the alleged problems with his sentence for some time.  In the petition, petitioner alleges that he pursued "prison process and

23 remedies" for over eight years.  (Dkt. 1 at 5.)  Petitioner alleges that his Classification Score Sheet prepared for his August 28, 2001 classification hearing incorrectly stated that his sentence was 55 years to life.  (Id. at 16.)  Petitioner alleges that in July 2002, Counselor Castillo

24 incorrectly calculated his sentence as 55 years to life.  (Id.)  Petitioner alleges that in August 2002, he was informed that his sentence was 32 years to life.  (Id.)  Petitioner alleges that in

25 August 2005, he was informed that his sentence was life without the possibility of parole.  (Id. at 17.)  Petitioner alleges that in December 2009, he was informed that his sentence was 32 years to

26 life.  (Id. at 18.)

1   runs from date on which factual predicate of claim could have been discovered through exercise

2   of due diligence).  Accordingly, petitioner's claim challenging the CDCR's disregard of the

3   BPH's 2004 order to obtain his sentencing transcript is  not timely unless petitioner is entitled to

4   statutory or equitable tolling.

5          Petitioner is not entitled to statutory tolling pursuant to 28 U.S.C. § 2244(d)(2)

6   because his state habeas petitions were filed well after the time the limitations period ran.

7   Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003).  Petitioner also makes no showing that

8   he is entitled to equitable tolling.  Accordingly, for the reasons discussed above, respondent's

9   motion to dismiss petitioner's claim challenging the miscalculation of his MEPD based on the

10  CDCR's disregard of the BPH's 2004 order to obtain petitioner's sentencing transcript is barred

11  by the statute of limitations.

12         As discussed above, the Superior Court suggested that petitioner could file a new

13  petition in state court challenging the alleged miscalculation of his MEPD if he attached the

14  proper documentation.  A renewed state court petition would apparently be based on later

15  miscalculations of petitioner's sentence and MEPD.  Because petitioner has not exhausted a

16  claim challenging the alleged miscalculation of his sentence and MEPD that is not based on the

17  2004 order by the BPH to CDCR, the undersigned cannot determine whether such a claim is

18  barred by the  statute of limitations.

19               D.  Failure to State a Federal Claim

20         Respondent argues that this action should be dismissed on grounds that petitioner

21  does not raise a cognizable federal habeas claim.  Respondent argues that petitioner's claim

22  alleging the miscalculation of his sentence is based on state law only.  As discussed above,

23  petitioner is alleging a violation of his right to due process in connection with the calculation of

24  his sentence and MEPD.  Petitioner has a constitutional right to a hearing to address the alleged

25  miscalculation.  Haygood, 769 F.2d at 1355; Jenkins v. Bernatene, 2012 WL 3764035 at *4.

26  ////

                                        13

1    Because federal due process entitles petitioner to some type of process to address

2    the alleged sentence and MEPD miscalculations, respondent's argument that petitioner has failed

3    to state a cognizable federal habeas claim is without merit.

4    Accordingly, IT IS HEREBY RECOMMENDED that respondent's motion to

5    dismiss (Dkt. No. 12) be granted for the reason set forth above.

6    These findings and recommendations are submitted to the United States District

7    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

8    one days after being served with these findings and recommendations, any party may file written

9    objections with the court and serve a copy on all parties.  Such a document should be captioned

10   "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files

11   objections, he shall also address whether a certificate of appealability should issue and, if so,

12   why and as to which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253

13   "only if the applicant has made a substantial showing of the denial of a constitutional right."  28

14   U.S.C. § 2253(c)(3).  Any response to the objections shall be filed and served within fourteen

15   days after service of the objections.  The parties are advised that failure to file objections within

16   the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst,

17   951 F.2d 1153 (9th Cir. 1991).

18   DATED:  November 15, 2012

19

20

21

22   KENDALL J. NEWMAN
     UNITED STATES MAGISTRATE JUDGE

23

24

25   mor561.mtd

26

14